UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Winter Moore,
     Plaintiff

     v.                               Civil No. 09-cv-329-SM
                                          Opinion No. 2010 DNH 061
Mark J. Rockwood and
Southern New Hampshire
Medical Center,
     Defendants

# O R D E R

Winter Moore brings this civil action against Southern New Hampshire Medical Center (the "Medical Center") and Mark Rockwood, claiming Rockwood, a phlebotomist employed by the Medical Center, assaulted her while she was a patient at the Medical Center. Defendants move the court to refer plaintiff's claims to the New Hampshire medical screening panel. See generally N.H. Rev. Stat. Ann. ("RSA") ch. 519-B. Plaintiff objects. For the reasons discussed below, that motion is denied.

## Background

According to Moore, she was admitted to the Medical Center on February 11, 2007, for treatment of severe colitis. Although the Medical Center denies this, Moore says that upon her admission she asked that "only female hospital personnel (with the exception of physicians) attend to her." Complaint at para.

11.  She claims a sign to that effect was posted on the door to her room.  Id. at para. 12.

The day after her admission, Moore says Rockwood came into her room, and neither introduced himself nor responded when Moore asked who he was.  When Moore asked if he was a doctor, she says Rockwood was unresponsive and said, simply, that he was going to perform a pelvic examination.  Moore claims he then pulled her blanket down from her chest to below her waist, "poked and pressed [her] stomach and pelvis hard with his hand," and then "reached up and squeezed her left breast very hard."  Complaint at para. 18.  Rockwood apparently took a sample of Moore's blood but, as he was leaving, Moore claims he "pressed his thumb hard against her right breast and gruffly rubbed it," id. at para. 22, and then "stood up, using [her] right breast as leverage," id. at para. 24.

Moore says she was so traumatized by the incident, she immediately telephoned her sister, who is a nurse.  She also says she subsequently reported the incident to the Nashua Police Department.  Concerned that Rockwood might return to her room later that evening, Moore says she repeatedly asked the Medical Center nurses if he was still working in the hospital.  According to Moore, the nurses refused to answer her inquiries.  Afraid to

remain in her room alone, Moore says she had a friend stay with her from 8:00 pm until 2:00 am the following morning.  She also says she asked that the lights in her room be left on for the entire night.  As a result of the alleged incident with Rockwood, Moore asked to be transferred to the Lahey Clinic, in Massachusetts.

At the Lahey Clinic, Moore says she received counseling concerning the alleged incident with Rockwood and says she later "attended private counseling sessions with a psychiatrist to deal with her trauma and resulting emotional and physical distress, including insomnia." Complaint at para. 34.  She claims she "has never fully recovered from this assault and continues to suffer emotional distress." Id. at para. 35.

## Discussion

I.  RSA ch. 519-B and New Hampshire's Medical Screening Panel.

In her complaint, Moore advances two common law claims against Rockwood and eleven statutory and common law claims against the Medical Center.  Among Moore's numerous causes of action against the Medical Center are claims for negligence, negligent supervision, negligence per se, and breach of contract.

She seeks damages for the emotional harm she suffered as a result of Rockwood's alleged conduct.[1]

New Hampshire law provides that whenever a person files a civil suit against a "medical care provider," seeking compensation for a "medical injury," his or her claims shall first be presented to a medical screening panel.  RSA 519-B:4. There is no dispute that both Rockwood and the Medical Center are medical care providers under the statute.  The parties do, however, disagree as to whether Moore is seeking to recover for a "medical injury," as that term is defined in the statute.  Moore insists that her claims are garden-variety tort claims having nothing to do with discrete standards of care applicable to medical care providers (while at the same time arguing that standards of care unique to medical providers are applicable in this case).  Defendants contend that Moore's claims are

_____

[1]     Against Rockwood, Moore advances claims for negligent and intentional infliction of emotion distress (counts 10 and 11).  She does not, however, assert a common law claim for assault or battery.

        Against the Medical Center, she advances the following claims: violation of Title 18 of the Social Security Act and 42 C.F.R. § 482.13 (count 1); violation of RSA 151:21 (count 2); negligence per se (count 3); negligence - direct liability (count 4); negligence - vicarious liability (count 5); negligent supervision (count 6); breach of contract (count 7); promissory estoppel (count 8); equitable estoppel (count 9); negligent infliction of emotional distress (count 10); and negligent misrepresentation (count 12).

4

necessarily claims for "medical injury," since the alleged tort
feasors are unquestionably "medical care providers" and the
claimed injuries were sustained in the course of providing
medical services to Moore.

The parties' disagreement stems from the fact that the
statute is ambiguous (or, at a minimum, unclear).  On one hand,
its stated purpose is to reduce medical malpractice insurance
rates by quickly identifying and resolving "claims of
professional negligence."  RSA 519-B:1 II.  To that end, a
screening panel is charged with making "findings regarding
negligence and causation," and determining "whether the acts or
omissions complained of constitute a deviation from the
applicable standard of care."  RSA 519-B:6.  The purpose of the
statute (and the screening panel) would, then, appear to be the
review of claims for medical malpractice or professional
negligence.

But, on the other hand, the statute defines the phrase
"medical injury" in extremely broad terms - terms that do not
limit "medical injuries" to the product of professional
negligence or medical malpractice.

> "Medical injury" or "injury" means <u>any</u> <u>adverse,</u>
> <u>untoward or undesired consequences</u> arising out of or
> sustained <u>in</u> <u>the</u> <u>course</u> <u>of</u> professional services

>rendered by a medical care provider, <u>whether</u> <u>resulting</u> <u>from</u> negligence, <u>error</u>, or omission in the performance of such services; from rendition of such services without informed consent or in <u>breach of warranty</u> or <u>in violation of contract</u>; from failure to diagnose; from premature abandonment of a patient or of a course of treatment; from failure properly to maintain equipment or appliances necessary to the rendition of such services; <u>or otherwise arising out of or sustained in the course of such services</u>.

RSA 519-B:2 III (adopting the definition of "medical injury" provided in RSA 507-E:1 III) (emphasis supplied).  The statute's broad definition of "medical injury" includes within its scope injuries that are the product of both negligent and intentional conduct, and, literally, "errors" that do not necessarily deviate from the expected standard of reasonable care applicable to medical professionals.  And, contrary to Moore's suggestion, it does not provide that a "medical injury" must, necessarily, result from professional negligence or medical malpractice. Instead, "medical injury" can be the result of a wide array of wrongful conduct, such as a breach of contract, a breach of warranty, a failure to obtain informed consent, or, conceivably, an intentional tort, such as an assault.  Similarly, the statutory definition of "action for medical injury" makes clear that the phrase reaches beyond negligence actions, and includes "any action against a medical care provider, whether based in tort, contract or otherwise, to recover damages on account of medical injury."  RSA 519-B:2 I.

In this case, one might plausibly think that the injuries for which Moore seeks compensation literally fit within the scope of "medical injury," as that phrase is defined in the statute. The alleged assault took place while Moore was receiving medical care and professional services from the Medical Center and its employee, Rockwood.  As to Rockwood, Moore claims the assault took place while he was in her hospital room to perform professional services as a blood technician or phlebotomist. Similarly, that alleged assault took place while Moore was receiving a broad range of professional medical services from the Medical Center related to the diagnosis and treatment of her illness.  And, in support of her negligence claims, Moore invokes duties of care unique to medical care providers, including those arguably embodied in both a state and federal patient's bill of rights - again suggesting that she is seeking compensation for "medical injury."

The opposing view is, however, equally plausible.  After all, Moore seeks damages for injuries arising out of an intentional tort; she does not claim that she was the victim of professional negligence or medical malpractice (at least not as those phrases have been traditionally understood).  In fact, courts that have addressed the issue have often concluded that an assault - particularly a sexual assault - upon a patient by a

7

medical care provider (other than a psychiatrist or gynecologist) does not constitute medical malpractice and does not arise out of the provision of professional medical services.  See, e.g., Roe v. Federal Ins. Co., 412 Mass. 43 (1992) (concluding that a dentist's sexual assault of a patient did not arise out of the rendering of "professional services").  If that is the law in New Hampshire, there would seem to be little sense in asking the medical review screening panel to determine whether the conduct of either the Medical Center or Rockwood amounted to medical malpractice or whether such malpractice proximately caused Moore's injuries.  See RSA 519-B:6 ("At the conclusion of the presentations, the panel shall make its findings regarding negligence and causation in writing.").

II.  The Act's Constitutionality.

In further support of her view that her claims should not be sent to the screening panel, Moore asserts that RSA ch. 519-B is unconstitutional.  Specifically, she claims the statute violates the equal protection and/or separation of powers provisions of the New Hampshire Constitution.  And, at least one state superior court judge has agreed that the statute is, at least in part, unconstitutional.  Eaton v. Fleet, Carroll County Sup. Ct. Docket No. 2008-cv-074 (N.H. Sup. Ct. Nov. 3, 2009) (holding that the provisions of RSA 519-B:8, 9, and 10 are unconstitutional under

8

Part I, Article 37 (the separation of powers clause) of the New Hampshire Constitution).  Other superior court judges, it would seem, have disagreed.  <u>See</u> Plaintiff's memorandum (document no. 58) at 19 (citing, as contrary authority, <u>Phillips v. Pascal</u>, Coos County Sup. Ct. Docket No. 07-c-60, Order on Motion in Limine (Vaughan, J.); <u>Krakie v. Catholic Med. Ctr.</u>, Hillsborough County Sup. Ct. Docket No. 06-c-717, Order (O'Neill, J.)).

To date, the New Hampshire Supreme Court has addressed neither the statute's constitutionality nor the scope of its definition of "medical injury" or "action for medical injury."

III.  <u>Certification to the New Hampshire Supreme Court</u>.

When, in situations such a this, a federal court is called upon to apply state law, it must "take state law as it finds it: 'not as it might conceivably be, some day; nor even as it should be.'"  <u>Kassel v. Gannett Co.</u>, 875 F.2d 935, 950 (1st Cir. 1989) (<u>quoting</u> <u>Plummer v. Abbott Laboratories</u>, 568 F. Supp. 920, 927 (D.R.I. 1983)).  When state law has been authoritatively interpreted by the state's highest court, this court's role is straightforward: it must apply that law according to its tenor.  <u>See</u> <u>Kassel</u>, 875 F.2d at 950.  When the signposts are somewhat blurred, the federal court may assume that the state court would adopt an interpretation of state law that is consistent with

logic and supported by reasoned authority.  See Moores v.
Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987).  But, this
court is and should be hesitant to blaze new, previously
uncharted state-law trails.  Accordingly, when a dispositive
legal question is novel and the state's law in the area is
unsettled, certification is often appropriate.  See Lehman Bros.
v. Schein, 416 U.S. 386, 391 (1974); Arizonans for Official
English v. Arizona, 520 U.S. 43, 76 (1997).  See also Acadia Ins.
Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997).

Initial construction of New Hampshire's statutory law (and a
determination as to whether a statute conflicts with the State's
Constitution), particularly when the statute in question
implicates substantial public policy concerns, is a realm best
occupied by the New Hampshire Supreme Court.  Because that court
has yet to address the discrete issues presented in this case,
and because it is unclear how it would likely resolve those
issues in the context of the facts as pled, the fairest and most
prudent course of action at this stage is to certify those
questions.

**Conclusion**

The Medical Center's motion to refer plaintiff's claims to the New Hampshire medical malpractice screening panel (document no. 47) is denied, without prejudice.

The court proposes to certify the following questions of law to the New Hampshire Supreme Court:

> Whether one or more of plaintiff's claims against Southern New Hampshire Medical Center seeks compensation for "medical injury," as defined by New Hampshire Rev. Stat. Ann. ("RSA") ch. 519-B (the "Act") and, therefore, must be referred to New Hampshire's medical review screening panel; and

> Whether one or more of plaintiff's claims against Mark J. Rockwood seeks compensation for "medical injury," as defined by the Act and, therefore, must be referred to New Hampshire's medical review screening panel; and

> Whether all or part of the Act is, as plaintiff claims, unconstitutional because it violates the equal protection and/or the separation of powers provisions of the New Hampshire Constitution.

See generally N.H. Supr. Ct. R. 34.  If any party objects to the form of the questions the court proposes to certify, a written objection, along with suggested alternative language, shall be filed on or before April 26, 2010.  The court proposes to submit to the Supreme Court, as its statement of facts, the facts as presented in this order.  If any party objects or wishes the court to supplement that statement of facts, that party shall submit an objection and/or proposed statement of supplemental

11

facts by the same date.  The parties should, of course, bear in mind that at this stage of the litigation, the court must assume that all properly alleged facts in plaintiff's complaint are true.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 5, 2010

cc:  Rosanna Sattler, Esq.
     Laura A. Otenti, Esq.
     Nancy J. Puleo, Esq.
     W. Kirk Abbott, Jr., Esq.
     Kevin M. O'Shea, Esq.
     Michael A. Pignatelli, Esq.
     Rose M. Joly, Esq.